(327 P.3d 1042)

No. 108,147

STATE OF KANSAS, *Appellee*, v. AARON D. LEWIS, *Appellant*.

Opinion filed June 20, 2014.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Christopher L. Schneider*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: Aaron Lewis appeals the convictions that arose out of a high-speed police chase. He argues that a paramedic should not have been allowed to provide expert testimony because the substance of the testimony wasn't disclosed to him 90 days before trial and the prosecutor didn't provide an evidentiary foundation for the paramedic to provide expert testimony. But the 90-day requirement for disclosure is part of the Kansas Rules of Civil Procedure and does not apply to a criminal case like this one. And the paramedic testified that he had extensive training and experience with how drivers and passengers are injured in auto accidents—something he relied upon in his work to look for hidden injuries that needed immediate treatment. The district court did not err in allowing the paramedic's testimony.

Lewis also claims that the prosecutor made improper comments that made the trial unfair, that the district court erred in its jury instructions, and that the district court erred in considering Lewis'

past criminal convictions when determining his sentences for the new offenses he was convicted of in this case. We have examined each of these claims, but we find no error. We therefore affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

One of the key issues at trial was whether Lewis was the driver or the passenger of the car that police pursued in the high-speed chase. Accordingly, we will set out in some detail the evidence presented to the jury about what happened, focusing on the evidence regarding each of the individuals who were apprehended after the car chase ended.

The events at issue here began on a Saturday morning in December 2006 when Kansas Highway Patrol Trooper David Morrison noticed that the windows on a black Pontiac Firebird appeared to be tinted more than allowed under Kansas law. When Morrison turned on his flashing lights to pull the car over, its driver kept going. Morrison and several other law-enforcement officers chased the Firebird at high speeds through Wyandotte County.

Eventually, the Firebird headed the wrong way on the Turner Diagonal, where it first sideswiped one car before colliding head-on with another. A few seconds after the Firebird came to a stop, a man wearing a dark jacket exited its passenger door and began to run away. Morrison and another highway patrol trooper, Curt Gabbert, chased the man. They apprehended him and later determined that he was Kenneth Evans. He had an abrasion on his forehead.

Shawn Okon, who witnessed the accident, stated that after the first man left the car, he saw a man sitting in the driver's seat of the Firebird, lying over the center section of the car. Okon testified that the man in the driver's seat then got out.

Trooper Michael Hamilton also reported to the scene. After he got out of his car, a witness pointed down the hill next to the road and said, "He ran down there." Hamilton saw a man pounding on the rear door of a duplex about 50 yards from the road. The man was only wearing one shoe, a white tennis shoe. Hamilton ran to-

ward the man, yelling, "Police!" and "Get on the ground!" Hamilton said the man was staggering "as if his legs were badly hurt."

Hamilton saw the man stumble into the duplex and noticed that his shoe fell off in the doorway. Hamilton yelled, "Police, open the door!" and then kicked the door open. Another trooper, Matthew Brooks, joined Hamilton inside the duplex, and they placed the man, later identified as Lewis, in handcuffs. Lewis had a broken rib, bruised lung, and abrasions to his right and left shins.

Brooks found a plastic baggie containing a white, powdery substance in Lewis' jeans pocket. The troopers also found a white shoe in the Firebird, wedged between the brake pedal and the floorboard.

The State charged Lewis with aggravated battery, possession of cocaine, fleeing or eluding a police officer, obstructing official duty, and reckless driving. All of the charges were tried to a jury, and Lewis was convicted. On appeal, Lewis raises claims relating to the admission of a paramedic's testimony, to statements made by the prosecutor at trial, to jury instructions, and to his sentencing.

As for the paramedic's testimony, defense counsel made a pretrial motion to keep out some potential evidence from the paramedic, Richard Christy, at trial—what's called a motion in limine. In that motion, the defense orally argued that the State had not provided proper notice of any expert opinions Christy might give, citing a notice provision of the Kansas Rules of Civil Procedure, K.S.A. 2013 Supp. 60-226(b)(6)(A), (C). Under that provision, expert testimony generally must be disclosed 90 days before trial. The district court ruled that Christy could provide nonexpert, or lay, testimony because he was at the scene of the accident but could not offer conclusions on whether Lewis had been driving the car on the date in question.

During Christy's direct examination by the State, defense counsel objected to Christy's testimony. The court overruled the objection, and Christy described his experience and training as a paramedic who regularly responds to automobile collisions. He told the jury that in a frontal collision, people in a car are either thrown "up" or "down." Christy said that after observing the damage to the windshield on the passenger side of the Firebird, the passenger

had likely gone "up" and suffered an abrasion-type injury to the head. He then testified that Evans, and not Lewis, had an abrasion on his forehead. Christy also testified that the steering wheel and driver's-side floorboard had been damaged and that a white shoe had been left wedged in the "accelerator area," indicating that the driver of the car had been thrown "down" under the steering wheel. Christy said that he would expect the driver of the car to have had fractured ribs or torso injuries as well as abrasions on his knees from hitting the dash components.

Another of Lewis' claims on appeal is that the prosecutor made improper statements at trial that are significant enough to order a new trial. The first such statement came during jury selection, as the prosecutor discussed the concept of reasonable doubt. To convict, of course, the jury must find the defendant guilty beyond a reasonable doubt. The prosecutor made statements apparently trying to distinguish between eliminating *reasonable* doubt and eliminating *all* doubt:

"[I]s anyone here going to hold me to a standard of proof that is more than beyond a reasonable doubt?

"I often hear people say they weren't a hundred percent sure. Does everyone understand you don't necessarily have to be a hundred percent sure? You can have a little doubt. But if it's not reasonable, that's not beyond a reasonable doubt."

After those remarks, the district judge advised the prosecutor—in a bench conference outside the jury's hearing—to be careful in his remarks: "[Y]ou are getting pretty close. I know what you're trying to do is tell them it's not beyond any doubt, but let's be careful."

Lewis also notes a statement the prosecutor made in closing argument. The prosecutor said that "[n]umerous people" said an officer identified himself and told Lewis to "[g]et on the ground."

Lewis contends that statement went beyond the evidence because only Hamilton provided supporting testimony for it.

Lewis' objection to jury instructions relates to a general instruction the court gave before the jury began its deliberations. In it, the court used a pattern jury instruction that told the jury that if it didn't reach a verdict, a retrial "would be a burden on both sides":

"Your only concern in this case is determining if the defendant is guilty or not guilty.

. . . .

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charges to a different jury at a later time. Another trial would be a burden on both sides.

. . . .

". . . If every juror is fair and reasonable, a jury can almost always agree.

"It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to your individual judgment."

In August 2007, when this case was tried, such an instruction was common and used in approved pattern instructions. Indeed, the Kansas Supreme Court in December 2007 found no error in its use in another case, *State v. Nguyen*, 285 Kan. 418, 435-37, 172 P.3d 1165 (2007). But this instruction—including its statement that another trial would be a burden on both sides—has since been disapproved, see *State v. Salts*, 288 Kan. 263, 265-67, 200 P.3d 464 (2009), and Lewis contends that its use here influenced the jury to wrongly convict him.

The district court sentenced Lewis based on his criminal-history score of A and Kansas sentencing guidelines. Lewis' final claim of error on appeal is that the district court should not have considered his criminal-history score of A, which was based on his past convictions, since the existence of those convictions wasn't separately proved to the jury. Based on that criminal-history score and the sentencing guidelines, the district court sentenced Lewis to a total of 141 months in prison. He received 130 months for the aggravated-battery conviction and a consecutive 11-month sentence for possession of cocaine. Lewis also received three other sentences made concurrent so that they do not increase the overall time he will serve: 6 months for eluding a police officer, 6 months for obstructing legal process, and 90 days (plus a $50 fine) for reckless driving.

## ANALYSIS

### I. *The District Court Did Not Err by Allowing Testimony from a Paramedic.*

Lewis argues that the district court should not have allowed testimony from Christy, the paramedic, raising two objections. First, Lewis argues that a provision of the Kansas Rules of Civil Procedure requiring disclosure of expert testimony, K.S.A. 2013 Supp. 60-226(b)(6)(A), should be applied in criminal cases and that the prosecution didn't provide sufficient notice of Christy's testimony under that statute. Second, Lewis argues that the State didn't present a sufficient evidentiary foundation to allow Christy to testify about how people are injured in automobile accidents based on their location in the driver's seat or in the front passenger's seat.

### *The Discovery Rules of the Kansas Rules of Civil Procedure Do Not Apply in Criminal Cases.*

The answer to Lewis' first argument is a simple one: The discovery provisions of the Kansas Rules of Civil Procedure don't apply in criminal cases. The point appears to have been so little questioned that no published appellate opinion discusses it. We will publish this opinion to correct that, but we do not find the question a close one.

Kansas has three sets of statutes that sometimes come into play in criminal cases. First, we have the Kansas Code of Criminal Procedure, K.S.A. 22-2101 *et seq.*, which contains provisions for pretrial, trial, and posttrial proceedings in criminal cases. Second, we have the Kansas Rules of Evidence, K.S.A. 60-401 *et seq.*, which apply "in every proceeding, both criminal and civil." K.S.A. 60-402. Third, we have the Kansas Rules of Civil Procedure, K.S.A. 60-201 *et seq.*, which generally apply to civil cases but may sometimes apply in criminal cases too.

Indeed, there are situations in which the Kansas Code of Criminal Procedure explicitly makes some part of the Kansas Rules of Civil Procedure applicable in criminal cases. For example, K.S.A. 2013 Supp. 22-3415(a) provides that the civil-procedural rules for forcing witnesses to attend, for handling their examination and oath, and for holding a witness in contempt will also be applied in

criminal cases. K.S.A. 22-3214(1) specifically provides that subpoenas in criminal cases be issued in the same manner as in civil cases, see K.S.A. 2013 Supp. 60-245, except that witness fees and mileage need not be paid to a witness in a criminal case. K.S.A. 22-3214(3).

But the Kansas Code of Criminal Procedure has its own provisions regarding pretrial discovery, K.S.A. 2013 Supp. 22-3212 and K.S.A. 22-3213. Neither purports to make any of the discovery rules of the Kansas Rules of Civil Procedure applicable to criminal cases.

This is perfectly understandable. The Kansas Rules of Civil Procedure are based on the Federal Rules of Civil Procedure, which don't apply in criminal cases. See Fed. R. Civ. P. 1 (stating that the federal civil-procedure rules apply "in all civil actions and proceedings"); Fed. R. Crim. P. 1(a)(1) (stating that the federal criminal-procedure rules "govern the procedure in all criminal proceedings" in federal courts); *United States v. McCalister*, 601 F.3d 1086, 1087 (10th Cir. 2010). Like the federal rules, the civil and criminal rules in Kansas have provisions limiting their scope to civil or criminal cases. K.S.A. 2013 Supp. 60-201(b) tells us that the Kansas Rules of Civil Procedure apply to "all civil actions and proceedings" except those commenced under special rules for limited civil actions. K.S.A. 22-2102 tells us that the Kansas Code of Criminal Procedure "shall govern proceedings in all criminal cases." So the baseline norm here is that you look to the Kansas Rules of Civil Procedure in civil cases and to the Kansas Code of Criminal Procedure in criminal ones.

With this background, let's look at K.S.A. 2013 Supp. 22-3212 and K.S.A. 22-3213, which provide for discovery in criminal cases, and K.S.A. 2013 Supp. 60-226, the civil-discovery statute Lewis seeks to apply in his case. For the convenience of the reader, we cite to the current version of each statute, but they are not materially different from the ones in effect at the time of Lewis' 2007 trial.

K.S.A. 2013 Supp. 22-3212(a) provides that a prosecutor must produce certain items if requested by the defendant. Some of the items relate to the potential work of an expert witness: "results or

reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case" if the prosecutor knows of them or could know of them through "due diligence." K.S.A. 2013 Supp. 22-3212(a)(2). With some exceptions, prosecutors also must provide other items that are "material to the case" if requested by the defendant and if producing them doesn't unreasonably burden the prosecutor. K.S.A. 2013 Supp. 22-3212(b). If the defense makes a request for discovery, it is also required to produce certain materials. K.S.A. 2013 Supp. 22-3212(c). And the criminal-discovery statute has its own deadline: the discovery must be completed "no later than 21 days after arraignment or at such reasonable later time as the court may permit." K.S.A. 2013 Supp. 22-3212(h).

K.S.A. 22-3213 provides some limitations on when statements made by State witnesses must be provided. Generally, the statement does not have to be provided until the witness has already testified for the State on direct examination. K.S.A. 22-3213(1), (2).

K.S.A. 2013 Supp. 60-226(b)(6) provides for the disclosure of expert testimony in civil cases. It states what information must be provided, K.S.A. 2013 Supp. 60-226(b)(6)(A)(i)-(ii), and when it must be disclosed—"[a]t least 90 days before the date set for trial." K.S.A. 2013 Supp. 60-226(b)(6)(C)(i).

Lewis contends that K.S.A. 2013 Supp. 22-3212 has no provision for expert-testimony disclosure, so the legislature must have intended that K.S.A. 2013 Supp. 60-226(b)(6) apply in criminal cases. We disagree.

First, as we have noted, K.S.A. 2013 Supp. 22-3212 has obvious application to experts through subsection (a)(2) for disclosure of "results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case."

Second, the overall structure of these discovery provisions—one in a set of statutes exclusively dealing with civil cases, the other in a set of statutes dealing exclusively with criminal cases—provides no suggestion whatsoever that the civil-discovery statute might apply in criminal cases or vice versa. This structure is not accidental,

since K.S.A. 2013 Supp. 22-3212 was directly patterned after Federal Rule of Criminal Procedure 16. See 13 Vernon's Kansas Stat. Annot., C. Crim. Proc. § 22-3212, Advisory Committee Comment, p. 83 (1973). In federal criminal cases, pretrial discovery regarding the government's case is governed by Rule 16 of the Federal Rules of Criminal Procedure, not by what's found in discovery provisions of the Federal Rules of Civil Procedure. See *United States v. Day*, 524 F.3d 1361, 1370 (D.C. Cir. 2008); *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007) (Wardlaw, J., dissenting).

Third, the timing provisions are inconsistent with the universal application of the civil rule for expert disclosures. It requires that the disclosures be made *at least* 90 days before trial, which is unrealistic for a criminal case. But a defendant in custody can force the State to bring him or her to trial within 90 days of arraignment. K.S.A. 22-3402(a). The State could easily be hamstrung by a requirement that "the substance of the facts and opinions to which the expert is expected to testify," K.S.A. 2013 Supp. 60-226(b)(6)(A)(ii) and (C), must be disclosed at least 90 days before trial.

Fourth, our ruling is supported by *State v. Jeffries*, 117 Kan. 742, Syl., 232 P. 873 (1925), where the Kansas Supreme Court found that a civil-discovery provision in that era's Civil Code did not apply in criminal cases.

We certainly will not presume that the legislature intended to make this civil-discovery provision applicable in criminal cases where it seems unworkable, where there are separate criminal-discovery provisions in place, and where the criminal-discovery statute has a different deadline for disclosures, *i.e.*, 21 days after arraignment or another reasonable time as ordered by the court. We therefore agree with two unpublished opinions of our court that concluded that the provisions of K.S.A. 2013 Supp. 60-226 for expert-witness disclosure do not apply in criminal cases. *State v. Fleming*, No. 106,104, 2012 WL 4794560, at *3-5 (Kan. App. 2012) (unpublished opinion); *State v. Brooks*, No. 103,774, 2011 WL 2793303, at *8-9 (Kan. App. 2011), *rev'd on other grounds* 297 Kan. 945, 305 P.3d 634 (2013).

Our conclusion that civil-discovery rules don't create discovery obligations in criminal cases doesn't necessarily mean that civil-discovery rules are never potentially relevant in criminal cases. Concepts found in the civil-discovery rules may well be helpful in guiding a trial court's discretion when enforcing the separate discovery obligations applicable to criminal cases. See Murphy, *E-Discovery in Criminal Matters—Emerging Trends & the Influence of Civil Litigation Principles*, 11 Sedona Conf. J. 257 (2010). For example, a federal district court in *United States v. O'Keefe*, 537 F. Supp. 2d 14 (D.D.C. 2008), held that the implementation of document production by the government in a criminal case must adhere to standards similar to those set out in civil-discovery rules. But the *O'Keefe* court did not use the civil-discovery rules as the source of the disclosure requirement. It simply held that the civil rules may be of help in determining whether documents produced by the government have been provided "in a form or format that is appropriate." 537 F. Supp. 2d at 19.

We should also note that in some cases, the government is constitutionally required to provide certain evidence to the defense. See *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Otherwise, however, "the extent of discovery to be allowed remains a policy judgment for rulemakers and legislators." 2 Wright & Henning, Federal Practice and Procedure: Criminal § 251, p. 62 (4th ed. 2009). The Kansas Legislature has not required that the State disclose expert testimony in criminal cases 90 days before trial. The district court properly overruled Lewis' objection based on K.S.A. 60-226.

*The District Court Did Not Err in Overruling the Defendant's Foundation Objection to the Paramedic's Testimony.*

The defendant's attorney objected at trial that the State hadn't presented an adequate foundation to allow Christy to testify about the types of injuries he saw from Lewis and Evans and how those injuries might have been sustained. The objections came after the prosecutor asked whether anyone had glass cuts consistent with hitting the windshield and what type of injuries would be expected

for a driver forced down by the collision. Lewis argues on appeal that the district court should have sustained these objections.

Lewis is right that the State was seeking expert-opinion testimony from Christy: the specific types of injuries frequently seen in auto accidents is not a matter of common knowledge. See *State v. Shadden*, 290 Kan. 803, 819-21, 235 P.3d 436 (2010) (noting that when opinion testimony goes beyond the common knowledge of a layperson, expert-witness rules apply). But the State provided a sufficient foundation to admit Christy's testimony by showing that his testimony was based on his own personal observations of auto accidents and was within his special areas of training and experience. See K.S.A. 60-456(b); *State v. Lawrence*, 281 Kan. 1081, 1088, 135 P.3d 1211 (2006).

The State established that Christy had responded to the scene of the accident, had inspected the car, and had seen both victims at the scene. In addition, Christy had been a licensed paramedic for 22 years, had medical training, and had responded on average to three to four motor-vehicle collisions per shift. He testified that he had been trained on mechanisms of injury and taught to look for vehicle damage as a clue to what parts of the body might be injured, even if the injuries weren't visible. Through this testimony, the State provided sufficient foundation for Christy's statements about how injuries may occur in an auto accident and how the injuries he observed may have occurred. See *Shadden*, 290 Kan. at 819 (noting that an expert may state his or her opinions developed from inductive reasoning based on the expert's experience, observation, or research).

## II.    *The Prosecutor's Comments Did Not Violate Lewis' Right to a Fair Trial.*

Lewis argues that two comments made by the prosecutor violated his right to a fair trial. The first was the prosecutor's attempt during jury selection to explain the concept of "reasonable doubt" by saying that someone need not be "a hundred percent sure" and can convict even with "a little doubt" as long as it's not "reasonable" doubt. The second was the prosecutor's statement in closing argument that "[n]umerous people . . . , including the police offi-

cers," said that Trooper Hamilton yelled for Lewis to get on the ground but that Lewis didn't do it.

We apply the same standards when reviewing the appropriateness of a prosecutor's comments during jury selection as we do to comments made in a prosecutor's opening statement or closing argument. See *State v. Simmons*, 292 Kan. 406, 409, 254 P.3d 97 (2011). We must first determine whether the prosecutor's comments were outside the wide latitude allowed in jury selection and argument. *State v. Stevenson*, 297 Kan. 49, 51, 298 P.3d 303 (2013). If we find that the prosecutor's comments were improper, we then must determine whether they constituted "plain error," which is defined as whether the statements prejudiced the jury against the defendant and thus denied the defendant a fair trial. 297 Kan. at 51.

A prosecutor may not suggest to the jury that it may convict a defendant on anything less than proof beyond a reasonable doubt. *State v. Brinklow*, 288 Kan. 39, 48-50, 200 P.3d 1225 (2009). But prosecutors may draw a distinction between the concept of proof beyond a reasonable doubt and proof beyond all doubt. See *Stevenson*, 297 Kan. at 53 (finding no error where prosecutor used a "Wheel of Fortune" analogy to distinguish between reasonable doubt and all doubt). In Lewis' case, the prosecutor's statements did not suggest that the jury could convict Lewis on anything less than proof beyond a reasonable doubt. We find nothing improper in his statements.

The prosecutor's second statement—about "[n]umerous people" testifying that Hamilton ordered Lewis to get on the ground—is somewhat misleading, though not as much as Lewis argues. He contends on appeal that only Hamilton provided testimony that he yelled for Lewis to get on the ground. But Trooper Brooks also testified that Hamilton had told Lewis to get on the ground. So there were two witnesses, not one, as Lewis argues—but also not "numerous" witnesses, as the prosecutor suggested in closing argument.

While "numerous" is imprecise as to how many are involved, when properly used it refers to "a large number" or "many," not two. See American Heritage Dictionary 1210 (5th ed. 2011). So

the prosecutor's use of that word did go beyond the evidence, though immediately following it with reference to the officers may have served to refocus the jury on the evidence actually presented on this point. But even if we found the comment outside the wide latitude given in closing argument, we would not find plain error: the improper comment was not gross and flagrant, showed no ill will, and was unlikely to have any significant weight in the jury's consideration of the case. See *State v. Ochs*, 297 Kan. 1094, Syl. ¶ 2, 306 P.3d 294 (2013). We find no reversible error in the challenged statements of the prosecutor in Lewis' case.

III.  *The District Court's Jury Instructions Were Not Clearly in Error*

Lewis next argues that the district court erred by telling the jury that a second trial would be a burden to both sides. This argument has been frequently raised in Kansas criminal appeals because the instruction the district court used was part of the set of pattern jury instructions recommended for use by Kansas courts. Even after Lewis' trial, the Kansas Supreme Court in *Nyugen* found no error in the use of this instruction. 285 Kan. at 436-37. But that court changed course in 2009 in *Salts*, 288 Kan. at 266-67. Because Lewis' case is on direct appeal, we must apply *Salts* even though it came after Lewis' trial. See *Stechschulte v. Jennings*, 297 Kan. 2, 18, 298 P.3d 1083 (2013); *State v. Waterberry*, 248 Kan. 169, Syl. ¶ 1, 804 P.2d 1000 (1991).

But *Salts* does not require that we reverse Lewis' convictions. In *Salts*, as here, the defendant did not object to the instruction in the district court, so we reverse only if the instruction was "clearly erroneous." K.S.A. 2013 Supp. 22-3414(3). We reverse for clear error only if we are firmly convinced that there is a real possibility that the jury would have rendered a different verdict if the trial error had not occurred. *State v. Colston*, 290 Kan. 952, 976, 235 P.3d 1234 (2010). In *Salts* and several other cases, the Kansas Supreme Court has found no clear error in the use of the instruction at issue here. *E.g., State v. Rochelle*, 297 Kan. 32, 44-45, 298 P.3d 293, *cert. denied* 134 S. Ct. 270 (2013); *State v. Warrior*, 294 Kan.

484, 514-15, 277 P.3d 1111 (2012); *State v. Burnett*, 293 Kan. 840, 854-55, 270 P.3d 1115 (2012).

Lewis attempts to distinguish his case from *Salts* in part by arguing that the district court also told the jury that "if you should fail to reach a decision, the case is left open and undecided. Like all cases it must be decided." Lewis suggests that this instruction is in error because cases don't have to be decided—the State can choose to dismiss a case or it can choose not to retry one. See *State v. Scott-Herring*, 284 Kan. 172, 181, 159 P.3d 1028 (2007). The problem with Lewis' argument is that the language he cites was not included in the district court's instruction in his case. So, as in *Salts* and the other cases noted above, we find no clear error in the use of the instruction that "[a]nother trial would be a burden on both sides."

IV. *The District Court Did Not Err in Determining Lewis' Criminal-History Score for Sentencing Purposes.*

Lewis' final argument is that the use of his criminal history, which was used to calculate his guidelines sentence, was unconstitutional since the past convictions weren't proved in this case to a jury. Our Supreme Court has rejected that argument. See *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013); *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002).

We affirm the district court's judgment.