No. 93,416

STATE OF KANSAS, *Appellee*, v. JEREMY V. NGUYEN, *Appellant*.

(172 P.3d 1165)

 Opinion
filed December 14, 2007. 

*Shawn E. Minihan,* of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Paul J. Morrison,* attorney general, were with her on the brief for the appellee.

The opinion of the court was delivered by

JOHNSON, J.: Jeremy V. Nguyen appeals his convictions for first-degree felony murder and for criminal discharge of a firearm at an occupied vehicle. Nguyen raises seven issues, none of which compel us to reverse his convictions.

Bang Tran was driving a vehicle in the right lane of a multiple-lane thoroughfare when he suffered a fatal gunshot wound, apparently from a weapon discharged from within a vehicle traveling in the same direction in the left lane. The Tran vehicle contained four passengers, one of whom also sustained a gunshot wound, albeit nonfatal. The other vehicle was driven by Josh Gallatin and contained three passengers, one of whom was Nguyen, seated in the

backseat on the passenger side of the car. Gallatin said that after he heard gunshots coming from the back right passenger side of his car, he observed from the corner of his eye that Nguyen's arm was moving out of the open window. Bobby Xayavong, Nguyen's friend, testified that, on the day of the shooting, Nguyen said that he fired the weapon at the vehicle but did not mean to do it. Some evidence suggested that gang membership may have played a role in the shooting.

After the incident, the group in Gallatin's car eventually arrived at Nguyen's house, where Nguyen went into the backyard, carrying a plastic bag which appeared to contain a solid metal object. Later, investigators found two rounds of ammunition in Nguyen's backyard, which an expert opined had been extracted from the same weapon as the four shell casings collected from the shooting scene and the expended round removed from the victim's body. However, the weapon was never recovered.

Nguyen was age 16 at the time, and the case was commenced as a juvenile offender action. The State moved to prosecute Nguyen as an adult. At the adult certification hearing, the State presented evidence to establish the requisite probable cause of a preliminary hearing.

Nguyen objected to the hearing because there was no indication that his mother had been served with notice or that she had appeared at any of the prior juvenile proceedings. The district court overruled the objection, noting that Nguyen's father was present in court on that day and had been present at the prior hearings in juvenile court.

After the witnesses were examined, Nguyen objected to combining the adult certification hearing and the preliminary hearing, claiming that the consolidation resulted in an unconstitutional shifting of the burden of proof. He argued that he had to choose between his interest in being cared for as a juvenile against his right against self-incrimination. The district court overruled the objection, sustained the State's motion to prosecute Nguyen as an adult, found probable cause to believe that Nguyen had committed the crimes of first-degree murder and criminal discharge of a fire-

arm at an occupied vehicle, and conducted an arraignment on those charges.

Ultimately, a jury convicted Nguyen on both charges. He appeals, claiming: (1) the prosecutor committed misconduct; (2) the court erred in conducting a preliminary hearing in conjunction with the adult certification hearing; (3) the adult certification hearing was invalid because of a failure to notify Nguyen's mother; (4) the evidence was insufficient to support adult certification; (5) the criminal discharge conviction was multiplicitous with the felony-murder conviction; (6) the giving of an *Allen*-type instruction was erroneous; and (7) cumulative errors deprived Nguyen of his right to a fair trial.

## PROSECUTORIAL MISCONDUCT

Nguyen complains of four comments by the prosecutor: two in opening statement and two in closing arguments. Trial counsel only objected to one of the opening statement comments, but the evolution of prosecutorial misconduct jurisprudence has eliminated the need for a contemporaneous objection to preserve the issue for appeal. See, *e.g.*, *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007).

Furthermore, that evolution has led to the application of the same standard of review, regardless of whether the defendant provided an opportunity for the trial court to remedy the misconduct by lodging an objection. *Albright*, 283 Kan. at 428. That review progresses in steps.

First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. If not, the analysis ends. If so, the court must decide whether the erroneous comments constitute plain error. In doing so, the court is guided by three factors:

"(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S.

18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), have been met. [Citations omitted.]" 283 Kan. at 428.

Typically, our cases separately analyze each challenged comment, and we will not break new ground in that regard. However, intuitively, one cannot divorce a comment from its context. In analyzing the meaning or harmful effect of an isolated portion of a statement or argument, one must look to the entire soliloquy.

### Opening Statement

Nguyen first complains about the following portion of the State's opening statement.

"Ladies and gentlemen, when that bullet stopped, so, too, did the life of Bang Nhut Tran. 18 years old, forever 18, forever young, forever dead. But that bullet— [objection and objection overruled]."

Nguyen contends the rhetoric was inflammatory. Further, he argues that it is improper to make such arguments in an opening statement. With respect to the latter contention, we have observed:

" 'Opening statements by counsel in criminal prosecutions are not evidence. They are given for the purposes of assisting the jury in understanding what each side expects its evidence at trial will establish and to advise the jury what questions will be presented for its decision. The tendency is to permit a prosecuting and defense attorney reasonable latitude in stating to the jury the facts they propose to prove.' [*State v. McCorkendale*, 267 Kan. 263, Syl. ¶ 4, 979 P.2d 1239 (1999).]" *State v. Kleypas*, 272 Kan. 894, 957, 40 P.3d 139 (2001), *cert. denied* 537 U.S. 834 (2002), *overruled on other grounds State v. Marsh*, 278 Kan. 520, 102 P.3d 445 (2004), *rev'd Kansas v. Marsh*, 548 U.S. 163, 165 L. Ed. 2d 429, 126 S. Ct. 2516 (2006).

The challenged comment was preceded by the prosecutor's description of the path the bullet traveled through Tran's body. While the statement may have been more dramatic than it needed to be, it nevertheless set forth facts which would come out during the trial. Tran was 18 years old; he was struck by the bullet discharged from the Gallatin vehicle; and he was killed by that bullet. Previously, we have refrained from putting too fine a point on the distinction between stating the facts and making a forbidden argument. See *State v. Alger*, 282 Kan. 297, 304, 145 P.3d 12 (2006) (" '[the victim] will forever be two years old and her last memory

will forever be that of the Defendant violently shaking the life out of her' ”). We continue that restraint and find that the prosecutor did not exceed the permissible latitude.

Nguyen's other opening statement challenge involved the following:

"When this case is over, the State will be asking that you bring back a verdict that the evidence in this case demands and that justice requires. That will be a verdict of guilty for the murder of Bang Nhut Tran."

Nguyen reads that comment as playing to the sympathy of the jury by asking for justice for the victim Tran, prior to the introduction of any evidence. We cannot accept Nguyen's characterization. To the contrary, the comment is textbook opening statement language. The prosecutor is absolutely permitted to ask for a verdict which is supported by the evidence. Moreover, a verdict supported by the evidence is the very essence of justice.

### Closing Argument

Nguyen cites to two sections of the prosecutor's closing argument as evidencing misconduct. In the first portion of closing, the prosecutor argued:

"Ladies and gentlemen, Wednesday, this coming Wednesday is July 4. It's Independence Day, and it's the day that our country celebrates the things that this country is founded upon, life, liberty and the pursuit of happiness and justice for all. And you may not know this, but the Declaration of Independence was actually signed on July 2. We celebrate July 4 because that's the day it was published, but—that's the day it was announced, but it was actually signed by the founding fathers on July 2. On January 27, 2001, Bang Nhut Tran had his life, his liberty, his pursuit of happiness taken away from him. All that he has left is justice.

"Now, on this day, July 22 (sic), 2001, 225 years to the date that our founding fathers set ink to paper declaring those rights, you can give Bang Nhut Tran justice. The evidence is there. Will you give Bang Nhut Tran justice? I ask that each and every one of you do so. I ask that you find this defendant guilty of Mr. Tran's murder. Thank you."

Then, in the rebuttal portion of closing, the prosecutor concluded by saying:

"Because, ladies and gentlemen, when you go back in that room and you put your heads together, the only verdict, the verdict that the evidence points to, the

verdict that justice in this case requires, is that you find the defendant guilty of first degree murder of Bang Nhut Tran. Thank you."

Nguyen interprets the argument as telling the jury to "do its job" in violation of the principles stated in *United States v. Young*, 470 U.S. 1, 18, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985) ("The prosecutor was also in error to try to exhort the jury to 'do its job'; that kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice. [Citation omitted.]"). He also relies on cases from outside jurisdictions where the courts have found that the prosecutor cannot tell the jury that its oath requires it to find the defendant guilty. See *United States v. Mandelbaum*, 803 F.2d 42, 43-45 (1st Cir. 1986) (addressing the prosecutor's statement, "I would ask you, therefore, to do your duty and return a verdict of guilty," the court found it is error to urge the jury to do its duty or job, but there was no prejudice so no reversal was required); *Noel v. State*, 754 P.2d 280, 282-83 (Alaska App. 1988) (finding the prosecutor told the jury to do its job in contravention of *Young* when he said, "[Defendant has] already been granted all the leniency he deserves and the charge is assault in the fourth degree and that's the charge you're here to enforce."); *Redish v. State*, 525 So. 2d 928, 929-30 (Fla. App. 1988) (finding the comment "if you succumb to the defense argument, you would be in violation of your oath as jurors" was an impermissible attempt to instruct the jury on its duties and functions); *People v. Nelson*, 193 Ill. 2d 216, 227-28, 737 N.E.2d 632 (2000) (finding reversible error where the prosecutor told the jury that its oath required it to find the defendant guilty on the evidence); *State v. Pennington*, 119 N.J. 547, 575-76, 575 A.2d 816 (1990), *rev'd in part on other grounds State v. Brunson*, 132 N.J. 377, 392, 625 A.2d 1085 (1993) (reversing based in part on prosecutor's admonition to the jury to return the verdict called for by its oath); *State v. Coleman*, 74 Wash. App. 835, 838-41, 876 P.2d 458 (1994) (finding it was improper to tell jury that it would violate its oath if it disagreed with the State's theory of the evidence, but the court did not reverse because there was only one instance of misconduct, and the prosecutor stated the jury's verdict would be honored no matter what it was).

First, we pause only briefly to declare that we find no impropriety whatsoever with the concluding comment on rebuttal. A prosecutor is certainly afforded the latitude to ask the jury to look at the evidence ("put your heads together") and enter a verdict which is consistent with that evidence and which will then be, by definition, consistent with justice. That comment was permissible, even if we were to find other portions of the closing outside the bounds of fair argument.

With respect to the first portion of the closing, we are not persuaded that it was akin to telling the jurors to do their job or that their oaths required a guilty verdict. However, we do note that the prosecutor's exhortation to do justice for Bang Nhut Tran runs afoul of dictum in *State v. McCorkendale*, 267 Kan. 263, 979 P.2d 1239 (1999).

*McCorkendale* found that the prosecutor in that case had not exceeded the wide latitude afforded to the State, but in doing so, the court pointed out that the prosecutor "did not argue that the jurors should find the defendant guilty to uphold the standards of the community or that the defendant would, if not found guilty, commit other offenses or *that the jury must render justice to the victim and convict.*" (Emphasis added.) 267 Kan. at 285-86. *McCorkendale* suggests, then, that arguing for a conviction in order to give the victim justice is prosecutorial misconduct.

As we noted above, it is permissible, if not expected, for a prosecutor to argue for justice in general, *i.e.*, justice for the citizenry of the State of Kansas. One can certainly perceive a distinction when the argument is asking for justice for the specific victim. After all, the plaintiff in a criminal case is the State of Kansas, unlike a wrongful death civil lawsuit. Nevertheless, we are loath to draw a bright line. As a practical matter, a criminal case cannot be completely divorced from the victim. Perhaps the touchstone is whether the argument seeks to divert the jury from the evidence so as to obtain a conviction based upon sympathy for the victim.

Here, we note that the passage of closing argument of which Nguyen complains was immediately preceded by an admonition that sympathy and prejudice are not part of the calculus. Specifically, the prosecutor said:

"I think I need to emphasize that one of those instructions is that you can't consider this case based on sympathy or prejudice. Sympathy and prejudice doesn't tell us who shot Bang Nhut Tran. You cannot consider the sympathy for Mr. Tran because he died, and you can't consider the sympathy for the defendant because of the situation that he is in."

Granted, a prosecutor's prophylactic admonition will not always insulate a subsequent appeal to sympathy. However, here, the prosecutor's argument was largely evidence based, notwithstanding an underlying promotion of awareness for the victim, and, when coupled with the admonition against sympathy and prejudice, did not exceed the bounds of permissible argument.

## COMBINING PRELIMINARY HEARING WITH ADULT CERTIFICATION

Nguyen contends that he is entitled to a reversal of his convictions and a remand for a new adult certification hearing because the district court overruled his objection to combining the preliminary hearing with the adult certification hearing. In the district court, Nguyen argued that the combined hearing effected an impermissible shift of the burden of proof, and that it was constitutionally inappropriate to balance Nguyen's interest in presenting evidence that he was amenable to treatment as a juvenile against his right against self-incrimination.

On appeal, Nguyen argues that combining the hearings impaired his statutory and due process right to defend against his certification for adult prosecution by requiring that he waive his right against self-incrimination, given that his testimony at a preliminary hearing could be used against him at his adult criminal trial. He asserts the doctrine of unconstitutional conditions by analogizing to *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968).

At the time, K.S.A. 38-1636(b) (repealed L. 2006, ch. 169, sec. 140) provided that the motion requesting the court to authorize prosecution as an adult could also contain a statement that the prosecuting attorney would introduce evidence of the offenses alleged in the complaint, and that the State could request the court to make the findings required in a preliminary examination. When

the juvenile respondent was present in court and the court found from the evidence that it appeared that a felony had been committed and that there was probable cause to believe that the felony had been committed by the respondent, the court could direct that there was no necessity for further preliminary examination and order the respondent bound over to the district judge having jurisdiction to try the case. K.S.A. 38-1636(g) (repealed L. 2006, ch. 169, sec. 140). In other words, the district court had statutory authority to follow the procedure utilized in this case.

Nguyen does not favor us with a standard of review. The State argues for an abuse of discretion standard, citing to *In re Davis*, 234 Kan. 766, 771, 674 P.2d 1045 (1984), where we opined that the district court possesses broad discretion in determining whether it should consider the evidence as probative only to the issue of juvenile waiver or also consider the evidence for the purpose of establishing probable cause. Here, the issue is not so much an evidentiary question as it is a challenge to the constitutionality with which K.S.A. 38-1636 was applied in this case. Thus, we perceive our review to be unlimited. *Cf. In re Tax Appeal of CIG Field Services Co.*, 279 Kan 857, Syl. ¶ 3, 112 P.3d 138 (2005) (constitutionality of statute a question of law subject to unlimited review).

The doctrine of unconstitutional conditions, upon which Nguyen relies, has been described as follows:

" 'The doctrine of unconstitutional conditions holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether. It reflects the triumph of the view that government may not do indirectly what it may not do directly over the view that the greater power to deny a benefit includes the lesser power to impose a condition on its receipt.' Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415 (1989)." *Mueller v. State*, 28 Kan. App. 2d 760, 766, 24 P.3d 149, *rev. denied* 271 Kan. 1037 (2001), *cert. denied* 535 U.S. 997 (2002).

The doctrine was illustrated in *Simmons*, which dealt with the tension between the Fourth and Fifth Amendments. One of the *Simmons* defendants testified at his suppression hearing that he owned an item of evidence which he was seeking to suppress. The motion to suppress was denied, and the prosecution used the tes-

timony against the defendant at trial. The *Simmons* opinion noted that the defendant's testimony was needed at the suppression hearing in order to establish standing, making it an integral part of his Fourth Amendment exclusion claim. 390 U.S. at 389-94. The Supreme Court opined:

"Thus, in this case [defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." 390 U.S. at 394.

Nguyen appears to acknowledge that, in defending against an adult certification, he was not exerting a constitutional right, but rather he was attempting to avail himself of a statutory benefit. "The special treatment of juvenile offenders because of age is not an inherent or constitutional right but rather results from statutory authority." *State v. Hitt*, 273 Kan. 224, 232, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003); see also *State v. Coleman*, 271 Kan. 733, 736, 26 P.3d 613 (2001). Thus, unlike the *Simmons* scenario, Nguyen was not placed in the position where "one constitutional right should have to be surrendered in order to assert another." 390 U.S. at 394.

Nguyen attempts to bootstrap into the doctrine of unconstitutional conditions by claiming that his due process right to present evidence in defense of the adult certification hearing in the juvenile proceedings conflicted with his right against self-incrimination in the adult criminal proceedings. We find the argument unpersuasive on the question presented of whether the combined hearing was impermissible.

We perceive the tension between the Fifth Amendment rights—due process versus self-incrimination—would have been present, regardless of whether the district court permitted the combined hearing. Nguyen acknowledges that the alleged conflict is an inherent one by arguing that his testimony at the preliminary hearing would have been available at his adult criminal trial, *i.e.*, that by

exercising his due process right to be heard at the preliminary hearing he would waive his right against self-incrimination. He does not explain why the same conflict would not have existed if the hearing had been restricted to adult certification.

A juvenile offender is also afforded the right against self-incrimination. See *In re B.M.B.*, 264 Kan. 417, Syl. ¶ 2, 955 P.2d 1302 (1998). Nguyen does not explain why the exercise of his due process right to testify in defense of the adult certification motion, even without the combined preliminary hearing, would not have also effected a waiver of his right against self-incrimination, either as to future juvenile proceedings or in future adult criminal proceedings.

In other words, any conditions placed upon Nguyen's exercise of his various Fifth Amendment rights were not the result of combining the preliminary hearing findings with the adult certification procedure. Accordingly, a remand for a new certification hearing is unwarranted.

## FAILURE TO NOTIFY MOTHER

Nguyen asserts that the State failed to strictly comply with the statutory procedure for certifying his adult prosecution by failing to notify his mother. He argues that the infirmity requires a reversal of his convictions. The parties agree that the question of whether K.S.A. 38-1636(c)(1) (repealed L. 2006, ch. 169, sec. 140) mandates notification to both parents before conducting the adult certification hearing is a question of statutory interpretation, over which this court has an unlimited review. See *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

K.S.A. 38-1636(c)(1) (repealed L. 2006, ch. 169, sec. 140) provided in relevant part: "The court shall give notice of the hearing to the respondent, *each parent* of the respondent, if service is possible, and the attorney representing the respondent." (Emphasis added.) A plain reading of the statute confirms Nguyen's contention that the court was supposed to notify his mother of the hearing, if service upon her was possible. Further, the court was presented with an opportunity to rectify any shortcomings in notification but inexplicably declined to do so. Nevertheless, the determinative

question presented is whether the failure of notice requires reversal of the subsequent adult convictions.

We pause briefly to note that the only portion of the juvenile proceedings included in the record on appeal is the transcript from the motion for adult prosecution and preliminary examination hearing. Ordinarily, the party asserting error has the burden to designate a record which affirmatively shows prejudicial error in the trial court. *State v. Goodson*, 281 Kan. 913, 919, 135 P.3d 1116 (2006). However, at the hearing below, the State did not dispute the lack of notice to the mother and was silent as to whether service was possible. On appeal, the State appears to confirm that notice did not occur. Therefore, we will proceed accordingly.

In *State v. Jones*, 273 Kan. 756, 763, 47 P.3d 783, *cert. denied* 537 U.S. 980 (2002), this court addressed a scenario similar to the one presented in this appeal. There, the juvenile's attorney argued at the motion hearing that the court could not authorize prosecution as an adult because neither parent had received notification of the hearing. The State responded that it did not know who the parents were or how to find them. The court proceeded with the motion hearing, relying on the State's contention that it did not know how to contact the parents. At the close of the hearing, the court announced that the mother was present, having arrived a bit late, and that there were numerous relatives in the courtroom. Therefore, the court opined that the mother had obviously received some type of notice so as to comply with the statute. On appeal, the State conceded that it had known the whereabouts of the juvenile's mother. 273 Kan. at 764.

Just as we have done, *Jones* found that the district court had violated the parental notification provisions of K.S.A. 38-1636(c)(1) (repealed L. 2006, ch. 169, sec. 140). However, *Jones* refused to find that the violation of the statutory parental notification provisions was a denial of the respondent's constitutional right of due process, so as to mandate reversal. *Jones* noted that the juvenile had been represented by counsel throughout the juvenile proceedings and that the situation did not involve a complete failure to provide notice of the charges to the juvenile, the juvenile's attorney, and the parents. Furthermore, the hearing was not adju-

dicatory but dispositional; even though a substantial right was involved, the hearing did not result in the determination of guilt or confinement. Finally, the court noted that the mother received actual notice as shown by her presence at the hearing, which served to satisfy the dictates of K.S.A. 38-1636(c)(1) (repealed L. 2006, ch. 169, sec. 140). 273 Kan. at 766; see also *State v. Muhammad*, 237 Kan. 850, 856, 703 P.2d 835 (1985) (holding that the court, without violating due process of the law, may conduct a hearing to determine whether to waive juvenile jurisdiction, even if the juvenile fails to appear, if counsel is present and allowed to participate on the juvenile's behalf); but *cf. In re Gault*, 387 U.S. 1, 31-34, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967) (finding due process rights were violated when there was a failure to provide notice of charges against the juvenile to the juvenile or his parents).

One might ponder whether the legislature intended the parental notification provision to be for the benefit of the parents or of the juvenile, given that the juvenile is required to be represented by an attorney. The essence of due process would appear to be served when the juvenile receives notice of the action to be taken against him or her and the juvenile is given a meaningful opportunity to be heard. However, the touchstone of due process is fundamental fairness, and one can perceive that occasion may arise where the juvenile might be hampered in defending against the adult certification motion by the absence of a particular parent. Therefore, we find that, where one parent appears at the adult certification hearing, a failure to prove that the other parent was served, as required by K.S.A. 38-1636(c)(1) (repealed L. 2006, ch. 169, sec. 140), will not be reversible error unless the juvenile can show that the absence of the one parent prejudiced the juvenile's ability to defend against the motion for adult certification.

Given that Nguyen makes no such claim of prejudice because of the absence of his mother, we decline to reverse his convictions for the court's violation of the statutory parental notification provisions.

## EVIDENCE SUPPORTING CERTIFICATION

An appellate court reviews the district court's decision to allow the State to prosecute a juvenile as an adult to determine whether

the decision is supported by substantial evidence. *State v. Mays*, 277 Kan. 359, 363, 85 P.3d 1208 (2004). " 'Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.' " 277 Kan. at 363 (quoting *Jones*, 273 Kan. 756, Syl. ¶ 2). In addition, in this case, K.S.A. 38-1636(a)(2) (repealed L. 2006, ch. 169, sec. 140) established a presumption that Nguyen should be prosecuted as an adult, so the burden of proof was upon Nguyen to rebut the presumption. Nguyen contends that he rebutted the presumption and that the evidence was insufficient to support certification.

K.S.A. 38-1636(e) (repealed L. 2006, ch. 169, sec. 140) directed the district court to consider each of the following factors in determining whether to certify a juvenile for adult prosecution:

"(1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution."

However, the statute specifically provides that the insufficiency of evidence pertaining to any of the above factors, in and of itself, shall not be determinative of the issue. K.S.A. 38-1636(e) (repealed L. 2006, ch. 169, sec. 140). Furthermore, K.S.A. 38-1636(a)(2)(A) (repealed L. 2006, ch. 169, sec. 140) provides, *inter alia,* that a 16-year-old respondent who commits an offgrid offense or who commits an offense while in possession of a firearm "shall be presumed

to be an adult" and that the "burden of proof is on the respondent to rebut the presumption." Although not challenged by Nguyen, we would note that the statutory presumption providing for the adult prosecution of some juveniles based on their age and the alleged offense committed does not violate procedural due process. See *Coleman*, 271 Kan. at 738.

Here, the district judge announced the following ruling:

"I find that the motion requesting authorization for adult prosecution is sustained.

"I specifically find that, given Mr. Nguyen's age at the time of the offense was 16; that the crime was committed while he was in possession of a firearm; that the seriousness of the alleged offense is so great that the protection of the community requires criminal prosecution as an adult; that this was an aggressive, violent, premeditated or willful crime; and that it was committed against persons wherein personal injury or death resulted in. I do find that the evidence of gang affiliation is strong enough to make that a factor in my decision as well. And I believe, given all of these reasons, that the interest of the community would be better served by adult criminal prosecution.

"I specifically make the finding that extended juvenile jurisdiction would not benefit Mr. Nguyen, in addition to the fact that juvenile jurisdiction alone does not."

Nguyen principally argues what the evidence did not show. However, as noted, the State need not present substantial evidence on each and every factor listed in the statute. Here, the State's proof was sufficient to support adult certification, even without the statutory presumption. Moreover, Nguyen provided nothing to rebut the presumption. The district court's finding is affirmed.

## MULTIPLICITY

Nguyen argues that his convictions for felony murder and criminal discharge of a firearm at an occupied vehicle are multiplicitous. He presents a question of law, subject to our unlimited review. See *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

Nguyen concedes that he did not make a timely objection in the trial court, but correctly points out that multiplicity may be raised for the first time on appeal in order to serve the ends of justice and prevent a denial of fundamental rights. See *State v. Simmons*,

282 Kan. 728, 743, 148 P.3d 525 (2006); *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984).

Nguyen's outdated argument contends that the common-law test for multiplicity should be applied here and that *State v. Patten*, 280 Kan. 385, 122 P.3d 350 (2005), was wrongly decided insofar as it found that the test for determining multiplicity rests with an analysis of the elements. Instead, Nguyen urges us to follow the single act of violence paradigm, discussed in *State v. Groves*, 278 Kan. 302, 95 P.3d 95 (2004), *overruled by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), to find that the single act of discharging the firearm at Tran's vehicle cannot be split into two convictions, one for felony murder and another for criminal discharge of a firearm at an occupied vehicle.

Although one might find *Groves'* single act of violence paradigm to be intuitively seductive when considering the general concept that a person should not receive multiple punishments for a solitary wrongful act, this court has clearly and unequivocally rejected that test in favor of a strict elements test. But *cf. State v. Pham*, 281 Kan. 1227, 136 P.3d 919 (2006) (modifying strict elements test when analyzing multiplicity of conspiracy convictions). After Nguyen filed his brief, this court issued its opinion in *Schoonover*, which declared that "the single act of violence/merger analysis should no longer be applied when analyzing double jeopardy or multiplicity issues in the context of multiple description cases where a defendant has been convicted of violations of multiple statutes arising from the same course of conduct." 281 Kan. at 493.

Nguyen does not argue that there is multiplicity under the elements test. Under our statutes and case law, the conviction for criminal discharge of a firearm is not multiplicitous with the conviction for felony murder. See K.S.A. 2006 Supp. 21-3436(a)(15) (criminal discharge of a firearm is an inherently dangerous felony whether or not such felony is so distinct from the homicide alleged to be a violation of felony-murder statute); *State v. Ramos*, 271 Kan. 520, 529-31, 24 P.3d 95 (2001) (finding that criminal discharge of a firearm and felony murder were separate and distinct offenses which require proof of different elements; the crimes did

not merge and punishment for both crimes did not violate double jeopardy). Therefore, Nguyen's multiplicity argument fails.

## ALLEN INSTRUCTION

Nguyen contends that the district court erred by giving an *Allen*-type instruction, which included the language: "Like all cases, it must be decided sometime." See *Allen v. United States*, 164 U.S. 492, 501, 41 L. Ed. 528, 17 S. Ct. 154 (1896). The defense objected to the instruction, but the district judge announced:

"I give this instruction. I have always given this instruction. I have not had one jury trial in which I have not given this instruction. I believe it's appropriate to give it at this point, along with the rest of the Court's instructions on the law, rather than waiting until at some point wherein the jury may actually need it as a result of having reached an impasse. In my experience, and how many—well over a hundred—well, probably 150 jury trials, we've had plenty that have still hung even when they've been given this instruction. I'm giving it now."

Included with the other instructions given to the jury prior to deliberations, the court gave an *Allen*-type instruction which mirrored PIK Crim. 3d 68.12 before that patterned instruction was modified in 2005. The specific instruction language was:

"This is an important case. If you should fail to reach a decision, this case is left open and undecided. Like all cases, it must be decided sometime. Another trial would be a heavy burden on both sides.

"There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

"Also, there is no reason to believe that the case would ever be submitted to twelve people more intelligent or more impartial or more reasonable than you. Any future jury must be selected in the same manner that you were.

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion so that this case may be completed.

"You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

When a defendant objects to instructions, our court is required to consider the instructions as a whole and not isolate any one instruction. Even if erroneous in some way, instructions are not reversible error if they properly and fairly state the law as applied to the facts of the case and could not have reasonably misled the jury. *State v. Edgar*, 281 Kan. 47, 54, 127 P.3d 1016 (2006).

In *State v. Makthepharak*, 276 Kan. 563, 568-69, 78 P.3d 412 (2003), this court noted that the court disapproved of the instruction when it was given to the jurors after deliberations were in progress. See, *e.g., State v. Struzik*, 269 Kan. 95, Syl. ¶ 6, 5 P.3d 502 (2000); *State v. Boyd*, 206 Kan. 597, 600-01, 481 P.2d 1015 (1971), *cert. denied* 405 U.S. 927 (1972); *Bush v. State*, 203 Kan. 494, 498-99, 454 P.2d 429 (1969). However, Nguyen acknowledges that this court has declined to find that it is error to give the instruction prior to the jury's retirement to begin deliberations. See *Makthepharak*, 276 Kan. at 569; *State v. Roadenbaugh*, 234 Kan. 474, 483, 673 P.2d 1166 (1983); *State v. Irving*, 231 Kan. 258, 265-66, 644 P.2d 389 (1982).

One might debate whether, upon reaching an impasse, a jury is coerced by hearing an *Allen* instruction from the judge, but not coerced by being referred back to the original instructions to read the *Allen* instruction on its own. Nevertheless, this court has made that distinction.

Despite the precedent approving a pre-deliberation *Allen* instruction, Nguyen challenges the specific language "[l]ike all cases, it must be decided sometime" as being inaccurate and misleading and argues that the implication that another trial places a burden on the parties pushes the jury to make a decision. Nguyen relies on cases from outside our jurisdiction, including *Burchette v. State*, 278 Ga. 1, 2, 596 S.E.2d 162 (2004), where the Georgia Supreme Court found that the portion of a jury instruction stating this case "must be decided by some jury" was inaccurate and should not be used. Interestingly, however, the Georgia court affirmed the defendant's conviction, even though the *Allen* instruction was given after the jury was deadlocked.

Nguyen's contention that the instruction as given is inaccurate and misleading has some merit. As noted, the PIK committee saw

fit to delete some of the language in 2005. However, after the parties filed their briefs, this court issued its opinion in *State v. Anthony*, 282 Kan. 201, 145 P.3d 1 (2006), where the defendant had also claimed that the instruction erroneously told the jury that the case had to be decided sometime. *Anthony* determined that the court would not depart from the holdings in *Makethepharak*, *Roadenbaugh*, and *Irving* that when the instruction accompanies all of the rest of the instructions given before deliberations, there is no error. 282 Kan. at 216. In the interest of consistency, we will conform to that holding.

*CUMULATIVE ERROR*

Finally, Nguyen argues that, even if the individual errors do not warrant reversal, their cumulative effect denied him a fair trial. We state our review standard as:

"Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under the cumulative effect rule if the evidence is overwhelming against a defendant. *Plaskett*, 271 Kan. at 1022.

". . . One error cannot support reversal under the cumulative effect rule." *Anthony*, 282 Kan. at 216.

Admittedly, the cumulative error determination involves a great deal of subjectivity. Nevertheless, we are satisfied that Nguyen received a fundamentally fair trial, and his convictions are affirmed.

Affirmed.

DAVIS, J., not participating.

GREENE, J., assigned.