NOT DESIGNATED FOR PUBLICATION

No. 120,223

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALE ALLEN KOLTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed May 8, 2020. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and STANDRIDGE, JJ.

PER CURIAM: Following a jury trial, Dale Allen Kolter was convicted of one count of stalking, a severity level 9 person felony. The district court sentenced Kolter to seven months in prison but released him on probation for a period of 12 months. Kolter now appeals, claiming that the prosecutor committed reversible error in closing argument and the court committed reversible error when it instructed the jury. Finding no reversible error, we affirm Kolter's conviction.

FACTS

After a hearing on January 31, 2017, the Shawnee County District Court granted R.D.'s request for a protection from stalking (PFS) order against Kolter. Under the terms of the PFS order, Kolter was not permitted to contact or communicate with R.D. or to "enter or come on or around the premises, the residence or workplace where [R.D.] resides, stays or works" until the order expired on January 31, 2018. Although he did not admit to the truthfulness of the allegations contained in R.D.'s petition, Kolter agreed to the terms and conditions of the PFS order. The court personally served Kolter a copy of the PFS order at the close of the hearing.

Approximately six weeks later, R.D. was sitting in her backyard with her dog while her teenage and adult children were inside the house with their friends. Around 9:45 p.m., the dog began "acting crazy" and "nipped" at R.D. when she tried to pick up the dog. This was unusual behavior so R.D. ran into the house and shouted for her kids and their friends ("the kids") to come and investigate. When they did, the kids found Kolter wearing a wig and crouching among some bushes next to the backyard fence. When he was discovered, Kolter tried to escape by running towards a neighbor's house but quickly was apprehended by the kids, who held him on the ground while R.D. called the police.

When the police arrived, they detained Kolter and collected statements from everyone involved. Kolter—after being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 694 (1966)—agreed to speak to police. Kolter claimed that he had come to the house to speak with R.D. He further claimed that he was crouching by the fence in the backyard because he wanted to speak with R.D. alone, so he was waiting for the other people in the house to leave. When asked about the wig, Kolter initially said he was wearing it because his head was cold but later admitted that he actually was wearing it so that nobody would recognize him. Finally, Kolter

acknowledged that he was aware of and personally had been served with a PFS order prohibiting him from communicating with R.D. and from entering or coming on or around the premises where R.D. lived, stayed, or worked. He ultimately was arrested for violating the PFS order. As they were getting ready to leave, Kolter asked the officers to lock up his car. The officers initially were not able to locate the vehicle but eventually found it parked around the corner at the end of the block.

On April 11, 2017, a grand jury indicted Kolter on one count of stalking, a severity level 9 person felony. He waived formal arraignment, and the district court entered a plea of not guilty on his behalf. The case proceeded to trial where, over the course of two days, R.D., her kids, her kids' friends, and the police officers who responded to the scene all testified to the above facts. Kolter took the stand in his own defense and claimed that R.D. texted him the day before the incident and asked him to meet her at 10 p.m. by the backyard fence of her home so that they could talk. He also claimed that R.D. told him she wanted him to park down the street and to meet her late at night so that no one would see him. But when asked to produce those text messages, Kolter was unable to do so. Kolter said the phone he had been using at the time was lost and the account was canceled. When R.D. was called as a rebuttal witness, she denied sending Kolter any type of invitation, via text message or otherwise.

After both parties rested, the trial proceeded to the jury instructions conference, most of which was spent arguing about whether and which lesser included offense instructions should be given. Relevant here, neither party objected to the district court's introductory or conclusory instructions. In fact, both parties specifically requested the instructions, which were given verbatim from the proposed jury instructions that were submitted before trial. Once the instructions were settled and read to the jury, both sides presented closing arguments, and the jury retired to the jury room where it deliberated for 37 minutes before returning a guilty verdict.

3

Kolter raises two points of error on appeal. First, he claims the prosecutor committed reversible error in closing argument. Second, he claims the district court erred when it instructed the jury. We address each of Kolter's claims in turn.

## 1. *Closing argument*

Kolter asserts that in closing argument, the prosecutor (a) improperly gave the jury his personal opinion of Kolter's guilt and (b) improperly appealed to the jury's passions and prejudices in the course of asking them to return a verdict of guilty.

Appellate courts use a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" 305 Kan. at 109.

### a. *The prosecutor's opinion*

A prosecutor is not permitted to offer his or her personal opinion regarding the evidence or the guilt or innocence of the defendant. *State v. Carter*, 305 Kan. 139, 156,

380 P.3d 189 (2016). But the prosecutor does have the "'freedom . . . to craft an argument that includes reasonable inferences based on the evidence.'" *State v. King*, 288 Kan. 333, 352, 204 P.3d 585 (2009).

Here, Kolter complains that the prosecutor offered an improper personal opinion when he made the following statement during closing argument while going through the evidence supporting each element that had to be proven to obtain a conviction:

> "Element number four: That act would cause a reasonable person to fear for her safety or the safety of a member of her immediate family. You heard testimony from [R.D.] that she was, in fact, in fear. You heard testimony from [the kids], who did not have a protection order in place against the defendant, but on their own accounts, under their testimony, they said when they saw the defendant, they were in fear.
>
> "The defendant appeared in close proximity to the house of [R.D.], in the dark, at 10:00 at night, with a wig on. [R.D.] had a protective order in place. She comes outside on March 17th, 2017, and there is the defendant in a disguise outside of her home. And what you have to ask yourself is, would a reasonable person be in fear, after filing a protection order on January 12th, that order being granted on January 31st, and that person appearing outside of their house in a disguise, in the dark, at 10:00 at night? Would that reasonable person be in fear? The answer is yes. The State has proven element number four."

Specifically, Kolter argues that by explicitly answering his own rhetorical question, the prosecutor stepped beyond the lines of proper argument and told the jury his "personal opinion of the evidence on that element of the crime" as well as his "personal opinion of Mr. Kolter's guilt on the whole." When read in context, however, the prosecutor's brief question and answer invited the jury to: (1) look at the testimony of R.D. and the kids, all of whom testified that Kolter's presence in the backyard caused them to feel fear; and (2) draw an inference from that evidence that Kolter's conduct would have caused a reasonable person to fear for his or her safety or for the safety of his or her immediate family. See *State v. Corbett*, 281 Kan. 294, 312-16, 130 P.3d 1179 (2006); see also

5

K.S.A. 2019 Supp. 21-5427 (defining elements of stalking as charged in this case). Because the prosecutor's comments did not fall outside of the wide latitude that is afforded to the State to craft an argument that includes reasonable inferences based on the evidence, we find no prosecutorial error.

### b. Inflaming the passion and prejudice of the jury

#### (1) Error

Kolter also claims that the prosecutor committed reversible error by improperly appealing to the passions and prejudices of the jury during the second half of his closing argument. Prosecutors have a duty to ensure that the State's case is presented with the proper amount of earnestness and vigor and therefore, as noted above, are granted a wide latitude to use every legitimate means to argue his or her case and bring about a conviction. *King*, 288 Kan. at 351; see *Sherman*, 305 Kan. at 109. But the prosecutor also serves as an officer of the court, occupying a quasi-judicial role with its own duties and responsibilities. *State v. Martinez*, 290 Kan. 992, 1014, 236 P.3d 481 (2010). A "prosecutor crosses the line of appropriate argument when that argument is intended to inflame the jury's passions or prejudices or when the argument diverts the jury's attention from its duty to decide the case on the evidence and controlling law." 290 Kan. at 1014-15.

Here, Kolter complains that the prosecutor improperly sought to inflame the passions and prejudices of the jury when, as he concluded the rebuttal portion of his closing argument, he stated:

> "[R.D.], on January 12th, 2017, filed a protective order against the defendant. On January 31st, she came back to the courthouse and that order was granted. March 17th, 2017, she had to call the police. Listen to the 911 tape. She is in fear.

"[R.D.] exhausted all of her options that was [*sic*] allotted to her in the justice system. [R.D.] came in the courtroom and testified yesterday and today about the same defendant. The story hasn't changed. [R.D.] has done her part.

"Now, as you go back there and you deliberate, she's going to need you to do yours, and that's find the defendant guilty of stalking beyond a reasonable doubt. Thank you."

Kolter argues that, through these statements, the prosecutor improperly validated R.D.'s decision to seek the civil PFS order in the first instance, which improperly distracted the jury from deciding this case—his alleged criminal violation of the PFS order—on the evidence and the law. This argument has merit. Kansas courts routinely hold that prosecutors step over the bounds of permissible argument when they seek a conviction based on the impact or particular circumstances relevant to a victim instead of basing a conviction on the facts presented and the applicable law. See *State v. Holt*, 300 Kan. 985, 999, 336 P.3d 312 (2014) (prosecutor improperly asked jury to return guilty verdict because it had privilege to right the wrong that defendant committed by taking young man's life); *State v. Friday*, 297 Kan. 1023, 1033-34, 306 P.3d 265 (2013) (prosecutor improperly asked jury to give victim his dignity back by returning a guilty verdict on charge of murder); *Martinez*, 290 Kan. at 1013-14 (prosecutor improperly asked jury to return guilty verdict in order to send message to child rape victim that she did right thing by reporting crime).

The State attempts to get around this by pointing to *State v. Nguyen*, 285 Kan. 418, 425-26, 172 P.3d 1165 (2007), where the Kansas Supreme Court held that when a prosecutor's argument was largely based on and coupled with an admonition against sympathy and prejudice, it is within the bounds of permissible argument. But this case is distinguishable from *Nguyen* because the prosecutor failed to give any type of similar admonition to the jury, either before or after the complained of comments. Although the prosecutor's statements regarding R.D.'s fear were evidence based, his follow up

7

comments—that she had done her part and now it was time for the jury to do theirs—were improper and constitute error.

(2) *Harmlessness*

Having concluded that prosecutorial error occurred, we now must determine whether that error prejudiced Kolter's right to a fair trial. See *Sherman*, 305 Kan. at 109. As noted above, appellate courts adopt the traditional constitutional harmlessness inquiry when evaluating prejudice. 305 Kan. at 109. "[P]rosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109.

The State argues that even if the prosecutor did improperly appeal to the passions and prejudices of the jury during closing argument, the error was harmless. Specifically, the State argues that the jury properly was instructed to disregard any statements that were not supported by the evidence and that the statements, arguments, and remarks of counsel—while intended to help them understand the evidence and apply the law—were not themselves evidence. We must presume that the jury followed those instructions and that this presumption serves to mitigate any damage caused by the prosecutor's comments. See *State v. Kettler*, 299 Kan. 448, 478, 325 P.3d 1075 (2014). We note the comments about which Kolter complains were brief, were not repeated, and were made at the very end of the prosecutor's closing argument. When compared with the overwhelming evidence in the record against Kolter, including his own admission that he violated the PFS order by entering and coming onto the premises where R.D. lived, we conclude that the State successfully demonstrated beyond a reasonable doubt that the error did not affect the outcome of the trial, i.e., that there was no reasonable possibility that the error contributed to the verdict. See *Sherman*, 305 Kan. at 109, 111 ("[T]he

8

strength of the evidence against the defendant may secondarily impact [the] analysis one way or the other.").

2. *Jury instruction*

Kolter argues that the district court erred when it instructed the jury that it "must," and in fact had a "duty," to follow the law, thereby undermining the jury's inherent right of nullification. When analyzing jury instruction issues, appellate courts follow a three-step process:

> "'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Here, there is no dispute that Kolter failed to properly preserve this issue for appellate review because he failed to lodge a timely and appropriate objection before the district court. That failure does not, however, prevent this panel from addressing the merits of Kolter's claims. Rather, it affects the standard applied at the third step and requires Kolter to demonstrate clear error. See 307 Kan. at 317-18.

At the second step, this panel must assess the merits of Kolter's claims by first using an unlimited review of the entire record to determine whether the challenged instructions were legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). If so, then the panel must next look at the evidence in the light most favorable to the requesting party to determine if the challenged instructions were factually appropriate. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016). But here, Kolter makes no claim that the challenged instructions were factually inappropriate. As such, he has waived that issue, and this panel need only determine whether the given

instructions were legally appropriate. See *State v. Williams*, 298 Kan. 1075, 1083, 319 P.3d 528 (2014) ("When a litigant fails to adequately brief an issue it is deemed abandoned."). To be legally appropriate, a jury "instruction must always fairly and accurately state the applicable law." *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012).

In this case, Kolter is challenging jury instructions 1 and 12 which were the introductory and conclusory instructions given to the jury. Those instructions provided:

"Instruction No. 1

"It is my duty to instruct you in the law that applies to this case, and it is your duty to consider and follow all of the instructions. You must decide the case by applying these instructions to the facts as you find them."

"Instruction No. 12

"When you retire to the jury room you will first select one of your members as Presiding Juror. The person selected will preside over your deliberations, will speak for the jury in Court, and will sign the verdict upon which you agree.

"Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions.

"Your agreement upon a verdict must be unanimous."

The language in both of those instructions is taken, verbatim, from PIK Crim. 4th 50.040 (2012) and PIK Crim. 4th 68.010 (2012) which are, in turn, based on K.S.A. 22-3403 and K.S.A. 22-3421 respectively.

Kolter does not, and cannot, argue that jury instructions 1 and 12's verbatim recitation of the PIK instructions are a misstatement of the statutes. Instead, he claims that they are legally inappropriate because they preclude the possibility of jury nullification. As it pertains to Instruction 12, Kolter's argument has been considered and rejected by the Kansas Supreme Court. See *State v. Boothby*, 310 Kan. 619, 629-32, 448

10

P.3d 416 (2019) (holding that instruction that was identical to PIK Crim. 4th 68.010 was legally correct and did not impermissibly infringe upon jury's nullification power). As it pertains to Instruction 1, the Supreme Court recently confirmed that telling the jury it must follow the law accurately describes the jury's duty which is "'to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon.'" *State v. Boeschling*, 311 Kan. 124, 130, 458 P.3d 234, 239 (2020) (quoting *State v. McClanahan*, 212 Kan. 208, 217, 510 P.2d 153 [1973]). We are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no such indication here. We conclude Instructions 1 and 12 were legally appropriate because they fairly and accurately state the law. Accordingly, the district court did not err in providing those instructions to the jury.

Affirmed.